**KNOWLTON BROS. v. UNITED STATES.**

No. 43989.

Court of Claims.

Jan. 3, 1944.

John C. Boland, of Syracuse, N. Y., for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff seeks recovery of income taxes alleged to have been overpaid because it says it overvalued its closing inventory for the fiscal year ending June 30, 1932. Its inventories were taken on the basis of "cost or market, whichever is lower." In its closing inventory for the taxable year, it included certain items at their cost price. It says, however, that these articles had become obsolete during the taxable year and that their actual selling price was much below cost and, therefore, under the regulations of the Treasury Department it was entitled to value them at their actual selling price rather than cost.

The defendant says, first, that there is no proof that these articles became obsolete within the taxable year, and, second, that if they were obsolete at the close of the year they were equally obsolete at the beginning of the year and, hence, if their value at the end of the year is to be adjusted, so also is their value at the beginning of the year, and that one adjustment offsets the other.

The articles in question were certain types of paper. R. W. McCormick, who was plaintiff's Vice President in charge of sales, was asked the question: "Whether on or about June 30, 1932, there was any market at all for this paper." He replied: "I would say there was an extremely limited market—I wouldn't say that there was any market at all because papers of this type always sell in limited quantities." He also said that this was also the situation in March 1931, June 1931, September 1931, December 1931, January 1932, March 1932, and on up to October 1932.

James C. McCormick, the father of R. W. McCormick, and plaintiff's treasurer, said "the three grades of paper were so dead that they smelled, and had been for a long time, and except for the vanity of the sales manager who was there then they would have been disposed of, took so long to get his vanity under control. It was known over a number of years to all of us that these lines were dying and officially dead."

The three articles in question were the Gay Head Cover paper, the Circle K Mimeo paper, and the Ravenna Text paper. During the taxable year plaintiff manufactured a negligible quantity of the Gay Head Cover paper, but manufactured a considerable amount of the Circle K Mimeo paper and also the Ravenna Text paper. It manufactured about 8,000 pounds of the Gay Head Cover paper at a cost of about $545. The total cost of the

Circle K Mimeo paper manufactured during the year was about $10,000, and the total cost of the Ravenna Text paper manufactured during the year was about $5,000. The opening inventory was $30,974.68.

It appears, therefore, that during the taxable year plaintiff manufactured about half as much of these papers as it had on hand at the beginning of the year. It continued the manufacture of the Ravenna Text paper and the Circle K Mimeo paper until April 1932 and of the Gay Head Cover paper until February 1932. This refutes J. C. McCormick's statement that these papers had been dead for a number of years. Plaintiff would not have continued to manufacture a paper which it knew was obsolete and could not be sold. J. C. McCormick says that they continued to manufacture these papers to appease the vanity of their sales manager who believed in them. But this statement is so contrary to business experience that it cannot be relied upon. Some of plaintiff's officers may have thought the papers were dead, but the parties in control of the business did not think so because they continued to manufacture them.

We must, therefore, take it as true that the papers were not obsolete as late as February and April 1932; and plaintiff points to no event occurring between these dates and June 30, 1932, that caused the value of the papers to decline. On the contrary, when plaintiff came to take its closing inventory it continued to value them at their cost price, although it had the right to value them at their actual selling price if in the meantime they had in fact become obsolete.

But if we accept as true J. C. McCormick's statement that the papers had been dead for a number of years, then it would follow that whatever adjustment should have been made in the closing inventory should have also been made in the opening inventory and one adjustment would offset the other.

R. W. McCormick says that there was only a limited market for the papers on June 30, 1932, but he also says the same condition existed throughout the taxable year and indeed in March 1931, prior to the beginning of the taxable year. If this is so, then whatever adjustment should be made in the inventory at the close of the taxable year should also be made in the opening inventory of the taxable year, and one adjustment would offset the other.

We are of opinion that plaintiff has not shown that these papers became obsolete during the taxable year. Therefore, under the proof it is not entitled to any adjustment in its cost of goods sold and, therefore, it has not shown that its income has been overstated.

It results that plaintiff's petition must be dismissed. It is so ordered.

WHALEY, Chief Justice, and MADDEN and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.